ANDREW, J. T. C.
In this local property tax proceeding the court must decide whether rollback taxes under the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq., were properly assessed against land formerly owned by plaintiffs, for the tax years of 1974,1975 and 1976. The matter has been submitted to the court on stipulated facts supplemented with memoranda of law.
During the relevant period plaintiffs were the owners of a tract of land 112.62 acres in size located in Wall Township, known and designated as Block 751, Lot 33Q, on the tax map of the township. For each of the years 1974, 1975 and 1976 this entire tract was valued, assessed and taxed at the value it had for agricultural use, pursuant to the provisions of the Farmland Assessment Act. N.J.S.A. 54:4-23.2. On September 7, 1976 plaintiffs entered into a written agreement with the Township *99 of Neptune Sewerage Authority (“Sewerage Authority” or “Authority”) to convey to the Authority a portion of the Wall Township tract comprising 17.263 acres. This portion of the tract has always consisted of woodland and a small swamp area, and, it appears, was never actively farmed.[1] The agreement indicated that the land was to be used as a park and that the sellers, plaintiffs herein, would be responsible for the payment of any rollback taxes that might be imposed.[2] It is this parcel of 17.263 acres that is the subject of this appeal.
In accordance with the agreement, plaintiffs conveyed the parcel to the Sewerage Authority by deed dated October 19, 1976. The very next day, October 20, 1976, the Authority conveyed this same parcel to the Monmouth County Board of Chosen Freeholders and the Monmouth County Board of Recreation Commissioners (referred to jointly as “Monmouth County” or “County”). This conveyance was part of a land exchange between the Sewerage Authority and Monmouth County previously agreed upon. It is clear from the record that the subject property was acquired by the Sewerage Authority solely for reconveyance to the county, and that it was to be used by the county for park and recreational purposes.
Due to the conveyance of the subject parcel the assessor of the taxing district determined that the use of the land changed from a qualifying use under the Farmland Assessment Act to some other use and thereby became subject to rollback taxes for the year of the change in use, 1976, and the two previous years, 1974 and 1975. A complaint was filed with the Monmouth *100 County Board of Taxation on behalf of Wall Township, seeking the imposition of rollback taxes in an amount equal to the difference between the taxes payable on the basis of the assessment made for qualified farmland and the taxes that would have been payable had the land been valued and assessed as other land in the taxing district. N.J.S.A. 54:4-23.8. Following a hearing the county board, by judgment dated July 6, 1977, ordered the rollback assessment. This appeal by plaintiffs followed.
The parties have agreed that if this court finds that the assessment was proper, the present assessment of $34,600 is correct. The parties further agree that if the property is entitled to farmland assessment, the assessment value shall be $6,900.
The Farmland Assessment Act provides for the assessment of real property at the value it has for agricultural or horticultural use if (a) it has been actively devoted to such use for at least the two successive years immediately preceding the tax year for which valuation under the act is sought; (b) the area of the land is not less than five acres and (c) application is made by August 1 of the pre-tax year. N.J.S.A. 54:4-23.6. Land is deemed to be “actively devoted” to agricultural or horticultural use when gross annual sales of agricultural or horticultural products produced on the land total a certain amount, or there is clear evidence that such sales are anticipated within a reasonable period of time. N.J.S.A. 54:4-23.5. When land which is in agricultural or horticultural use and is being assessed under the provisions of the act, is applied to a use other than agricultural or horticultural, it becomes subject to rollback taxes for the year of the change in use and such of the two preceding tax years in which the land was assessed as farmland. N.J.S.A. 54:4-23.8.
It is now well established that land which has only marginal value for agricultural use, and which may not by itself meet all the requirements of the Farmland Assessment Act, may nevertheless be assessed as farmland if it bears a certain rela *101 tionship to other land actively devoted to agricultural use. The leading case in this area is Andover Tp. v. Kymer, supra, in which the taxpayer sought farmland assessment for a farm approximately 210 acres. The taxing district sought to limit farmland assessment to the acreage that was tillable and in active farm use, and to deny such assessment for those portions of the land that were wooded or swampy or consisted of rocky terrain. The court affirmed the finding below by Judge Evers of the Division of Tax Appeals (now Tax Court) that the entire tract was entitled to farmland status:
Under these eircumstanees the special farmland tax treatment is not limited to that part of the tract shown to be used for an agricultural purpose — i. e., only the fertile or cultivated area of the farm. Woodland, wet areas and other acreage having a marginal value for agricultural or horticultural use may also be given such tax advantage, as long as it is part of, appurtenant to, or reasonably required for the purpose of maintaining, the land actually devoted to farm use, particularly where it has been part of the farm for a number of years....
In the present case no portion of the land was used for a purpose other than farming. The woodland and the swampy areas and the rocky terrain have been part of the farm and considered as such for many years. We cannot say that this marginal land was not part of or appurtenant to the farm, or was not reasonably necessary to maintain the farm for agricultural use. [140 N.J.Super. at 403—404, 356 A.2d 418; emphasis supplied]
The court’s decision was deemed consistent with the public policy objectives of the Farmland Assessment Act:
The primary goal [of the Act] was to save the family farm and to provide farmers with some economic relief by permitting farmlands to be taxed at a lower assessment as ongoing farms rather than on any other basis. But other objectives, although incidental to this principal purpose, are also significant, such as encouraging the maintenance and preservation of open space and the beauty of the countryside.
These objectives may be largely frustrated if the act were to be construed as requiring cultivation of the kind of marginal land we have discussed in order to qualify for farmland assessment as part of a tract otherwise devoted to farm use.
Another objective of the act is furthered by the foregoing interpretation thereof: a consideration of the problems of the assessors.. .. Such problems are minimized to the extent that the Legislature had adopted a concrete formula to determine whether land is actively devoted to the statutory uses. Moreover, as the judge below indicated, to adopt the township’s view, the assessor would have the “staggering undertaking” of extracting from the land non-fertile areas, such as rocky, swampy or wooded lands. [Id. at 404-405, 356 A.2d 418].
See also Bunker Hill Cranberry Co. v. Jackson Tp., 144 N.J.Super. 230, 365 A.2d 204 (App.Div.1976), certif. den. 73 N.J. 59, 372 *102 A.2d 324 (1977); Califon v. Stonegate Properties, Inc., 2 N.J.Tax 153 (Tax Ct. 1981); Spiotta Bros. v. Mine Hill Tp., 1 N.J.Tax 42 (Tax Ct.1980); N.J.A.C. 18:15-6.2(a)(6); cf. Mason v. Wyckoff Tp., 1 N.J.Tax 433 (Tax Ct.1980); Kugler v. Wall Tp., 1 N.J.Tax 10 (Tax Ct. 1980).
The rationale of Andover Tp. v. Kymer was argued by the taxpayer in Wiesenfeld v. South Brunswick Tp., 166 N.J.Super. 90, 398 A.2d 1342 (App.Div.1979), who was seeking farmland assessment for a wooded parcel of land that was contiguous to, but functionally distinct from, an existing and qualified farm. The existing farm, Lot 16Q, consisted of 50 acres of tillable soil, and 130 acres of woodlands and wetlands, all of which was assessed as farmland. The taxpayer sought to qualify the contiguous, wooded tract on the same theory that qualified the wooded portion of the farm tract. The court was not persuaded:
We are satisfied that the [Andover Tp.] rationale applies only where the disputed woodland is both legally and functionally part of the qualifying farm in question. That is, obviously, the rationale requiring the farmland status of the 130 wooded and wetland acres of Lot 16Q which are not arable. But we do not regard that rationale to be applicable where as here there is contiguously owned, separately acquired woodland which has never functionally been part of the farm, which has not been integrated with it in any documentary manner and on which there have been undertaken independent commercial operations not conducted for the benefit of the farm or the farmer but as a completely separate business activity. Thus, it is our view that where the woodland in question is not “part” of the farm within the rational of Andover Tp., supra, it can, if contiguous to the farm, qualify for the farmland assessment only if proved to be both appurtenant thereto and reasonably required for its maintenance. [166 N.J.Super. at 94-95, 398 A.2d 1342; emphasis supplied]
In this case plaintiffs, to support their contention that rollback taxes should not have been imposed, rely on the fact that the use of the subject parcel did not change in 1976.[3] Rollback taxes are required when the use of the land is changed, *103 irrespective of the nature of the new use[4] or the status of the person owning the land at the time of the change in use. New Jersey Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 547, 350 A.2d 69 (App.Div.1975), aff’d o. b. 73 N.J. 180, 373 A.2d 652 (1977). In the absence of a change in use, plaintiffs assert, the property is entitled to the same favored farmland status it enjoyed prior to its sale. This property, they maintain, is woodland, has always been woodland, and has remained woodland, unchanged, “since time immemorial.”
Plaintiffs’ premise that absent a change in use the rollback does not apply, is, in the abstract, certainly correct. However, the analysis of the opinions quoted from above, when applied to this case, make it clear that in the case of appurtenant woodland this premise cannot be applied mechanically. Woodland that does not itself satisfy the income and other requirements of the farmland legislation may qualify for farmland assessment only when it stands in a certain relationship to other qualifying property. Prior to the conveyance of this parcel to the Sewerage Authority it was “part of, appurtenant to, or reasonably required for the purpose of maintaining” that portion of the 112-acre tract which was actively devoted to agricultural use. Andover Tp., supra 140 N.J.Super. at 403, 356 A.2d 418. However, this relationship was severed when the subject parcel was split off and conveyed to a third party for purposes wholly unrelated to agriculture or horticulture. The very fact of its conveyance demonstrates that it was no longer needed to support the remaining, unsold portion of the farm. It was then owned by an unrelated party and held, if not used, for a nonagricultural use. It was no longer “part” of the qualifying farm within the meaning of Andover Tp. Thus it was entitled to farmland assessment “only if proved to be both appurtenant thereto and reasonably required for its maintenance.” Wiesenfeld v. South Brunswick Tp., supra 166 N.J.Super. at 95, 398 A. *104 2d 1342. I find that this property, following its transfer in October 1976, was no longer required for the maintenance of the balance of the qualifying land. Accordingly, a change in use occurred in 1976 which beckoned to a rollback assessment.
This result is supported by two provisions of the Farmland Assessment Act. N.J.S.A. 54:4 — 23.15 provides that
Continuance of valuation, assessment and taxation under this act shall depend upon continuance of the land in agricultural or horticultural use and compliance with the other requirements of this act and not upon continuance in the same owner of title to the land. Liability to the roll-back tax shall attach when a change in use of the land occurs but not when a change in ownership of the title takes place if the new owner continues the land in agricultural or horticultural use, under the conditions prescribed in this act.
N.J.S.A. 54:4-23.16 provides:
Separation or split off of a part of the land which is being valued, assessed and taxed under this act, either by conveyance or other action of the owner of such land, for a use other than agricultural or horticultural, shall subject the land so separated to liability for the roll-back taxes applicable thereto, but shall not impair the right of the remaining land to continuance of valuation, assessment and taxation hereunder, provided it meets the 5-acre minimum requirement and such other conditions of this act as may be applicable.
See, also, NJ.A.C. 18:15-10.1; -11.1.
These provisions emphasize that when land which has been assessed as farmland is either transferred to a new owner or split off from a larger tract, it may retain its farmland status and avoid liability for rollback taxes only when it continues to satisfy the provisions of the act. The subject parcel did not meet the statutory criteria for 1976.
I note, in addition, that subjecting this property to rollback taxes is not inconsistent with the policy considerations of the Farmland Assessment Act noted by the court in Andover Tp., supra. Since the land has a new owner and is to be devoted to nonagricultural purposes, the act’s primary objective of economic relief for farmers and preservation of the family farm will not be frustrated. Moreover, the assessor will face no uncommon difficulties in valuing the land now that it has been split off from the farm property.
For all of the foregoing reasons, I find that a change of use of this property occurred in 1976 and the rollback assessment *105 imposed by the Monmouth County Board of Taxation for the tax years of 1974, 1975 and 1976, is correct.[5] Accordingly, its judgment is affirmed. The Clerk of the Tax Court will issue the appropriate judgment.

Although not mentioned in the stipulation of facts submitted to the court, the record reveals that a poultry farm was operated on the large tract which was the basis for the property’s assessment as farmland. It is also apparent from the record that the 17.263 acres of swamp and woodland was not actively farmed but qualified for farmland assessment as being appurtenant to land actually devoted to farm use. See Andover Tp. v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976).

The agreement contained the following provision: “Seller [plaintiff] shall be responsible for roll-back taxes in the event that the subject premises are [assessed] under the Farmland Assessment Act.”

Although it is clear that the property was acquired by Monmouth County for use as a park, the record does not indicate to what actual use the land was put in the latter months of 1976 following the conveyance to the County. However, this court’s decision would be the same whether the property was immediately converted to park use or remained in the same state that existed prior to the conveyance.

Provided, of course, that the new use is not an agricultural or horticultural use different, however, from the previous agricultural or horticultural use.

In their brief plaintiffs raise the question of whether liability for the rollback taxes rests with them or with one of the subsequent owners of the property. This issue was not preserved in this court’s pretrial order of January 8, 1981, and is not properly before the court. R. 4:25-1.